**PENNSYLVANIA LIQUOR CONTROL BOARD, Appellant,**

v.

**RICHARD E. CRAFT AMERICAN LEGION HOME CORPORATION.**

Commonwealth Court of Pennsylvania.

Submitted Nov. 8, 1996.
Decided Dec. 12, 1996.

**438**

Rodrigo J. Diaz, Assistant Counsel, Harrisburg, for appellant.

Jack W. Cline, Mercer, for appellee.

William T. Renz, Doylestown, for amicus curiae, The American Legion, Department of Pennsylvania, Inc.

Before COLINS, President Judge, PELLEGRINI, J., and LORD, Senior Judge.

PELLEGRINI, Judge.

The Pennsylvania Liquor Control Board (Board) appeals from the May 30, 1996 order of the Court of Common Pleas of Mercer County (trial court) reversing its January 26, 1996 order refusing an application for a Club Liquor License submitted by the Richard E. Craft American Legion Home Corporation (Home Corporation).

The Home Corporation is an association owning property that is located in Springfield Township, Mercer County. Its purpose is to maintain a lodge, club or quarters for the Richard E. Craft American Legion Post 584 (Post) for public gatherings and other social purposes, and to maintain a physical structure for the Post. The Home Corporation was granted its Articles of Incorporation pursuant to the Post's Charter in 1954. The Liquor Code grants an exception to incorporated units of national veterans' associations to enable them to obtain a liquor license, even where the municipality's quota has been filled. Because under Section 461 of the Liquor Code [1] (Code), Springfield Township already had in excess of its quota for liquor licensees, in 1995, the Home Corporation applied for a Club Liquor License under Section 461.1 of the Liquor Code [2] as a "subordinate unit of a national veteran's organization".

Before the Board, the Home Corporation presented the testimony of its then President, Andrew Homza. Homza testified that the Home Corporation could not operate in-

---

1. Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. § 4–461.

2. Act of April 12, 1951, P.L. 90, Section 461.1, added by the Act of December 12, 1980, P.L. 1195, *as amended,* 47 P.S. § 4–461.1.
   Section 461.1 of the Liquor Code states:
   (a) The board shall have the authority to issue new licenses to incorporated units of national veterans' organizations, as defined herein, in municipalities where the number of licenses exceeds the limitation prescribed by section 461.
   (b) The term "national veterans' organization" shall mean any veterans' organization having a national charter.

The term "incorporated unit of a national veterans' organization" shall mean any incorporated post, branch, camp, detachment, lodge or other subordinate unit of a national veterans' organization having one hundred or more paid up members and organized for a period of at least one year prior to filing the application for a license.
   (c) When the charter of an incorporated unit of a national veterans' organization is suspended or revoked, the retail license of the organization shall also be suspended or revoked. The retail license of an incorporated unit of a national veterans' organization is not transferable to any other organization or person.

dependently of the Post, that the Home Corporation and the Post hold separate elections, that the voting members of the Home Corporation and the Post are identical, and that, though a person who had not served in active war duty could be a member of the Home Corporation as a social member only, he could not be a member of the Post.

Also testifying on behalf of the Home Corporation before the Board was the Post Adjutant, William Whenry. At the time of that hearing, Whenry held no position in the Home Corporation. Whenry testified that the Home Corporation finances the affairs for the Post, and is responsible for its grounds, upkeep and any social events held by the Post. Whenry identified the American Legion Department of Pennsylvania Directory, a publication of the American Legion, which listed both the Post, as well as the Home Corporation. Whenry stated that the Home Corporation has no authority to act independently of the Post and is recognized by the national organization as a subordinate unit. He testified that all Posts have home associations such as the Home Corporation. He described the difference between social and voting members of the Home Corporation, defining regular voting members as those persons who served in the military during wartime conflict. Social members need not have served in the military, but have no vote in the Home Corporation and are not permitted to be members of the Post.

The Home Corporation also entered into evidence Exhibit A–9, a memo from the Legion's State Adjutant's office to all post commanders, adjutants and judge advocates. That memo dictates the classes of membership that may exist in home corporations, and requires that where a *home corporation* holds a liquor license, it can have no social members. The memo further states that where any post has real estate and a club that dispenses alcohol, the real estate should be owned by the post and the liquor license owned by the home corporation so that the post and real estate would be insulated from liability in the result of an alcohol-related tragedy.

Determining that the Home Corporation is separate and distinct from the Post, the Board denied the Home Corporation's application for a liquor license as an incorporated unit of a national veteran's organization. Relying on Exhibit A–9, the memo advising the Post and Home Corporation of liability, it reasoned that the Home Corporation could not be a subordinate unit of the national organization when it was created as a separate entity so as to be a barrier to liability for the Post and national organization in the event of alcohol-related incidents. It also found that just because the national organization included a listing for the Home Corporation in a directory book signed by the National Commanders, that was insufficient to establish that the Home Corporation was a direct subordinate of a national veteran's organization.

The Home Corporation appealed from the Board's order to the trial court and a *de novo* hearing was held. The sole witness testifying before the trial court was William Whenry, now the President of the Board of the Home Corporation. He testified that the former President of the Board of the Home Corporation, Andrew Homza, who had testified before the Board, did not have a full understanding of how the Home Corporation and Post work. Whenry testified that all Post members are also members of the Home Corporation. He testified that the Home Corporation had approximately 250 members, about half of which were regular members and half of which were social, nonvoting members. He explained the difference between regular members, those members who served during wartime conflict, and social members, those members who need not have been in the military. Whenry testified that only regular members, not social members, had the right to vote and hold positions on the Board of the Home Corporation. Whenry further testified that if the Post was disbanded or its charter revoked, the Home Corporation would cease to exist.

The trial court reversed the order of the Board and held that the Home Corporation was entitled to a liquor license pursuant to 47 P.S. § 461.1. Because it found that Whenry's testimony was substantially different than that which was presented by the Home Corporation at the hearing before the Board, the

trial court made its own findings of fact. It found that the Home Corporation was created to maintain physical quarters and to provide financial support for the Post, and also represented an attempt to provide a legal buffer between the Post and the activities of the Home Corporation. The court found that "the existence of a home corporation within the structure of American Legion Posts is recognized by the state and national organization; and, in fact, home corporations are listed in the state directory of the American Legion." The court further found that the state and national organizations exercise control over the Post and Home Corporation at each step of the hierarchy of the organization, and that direct control over the Post and Home Corporation is exercised through the Charter. The court noted that the Home Corporation was incorporated in 1954 for the benefit of the Post, and that it is limited to acting only in furtherance of the Post. The court held that the Home Corporation, to qualify for the exception under 47 P.S. § 461.1, need only be a subordinate unit, not a "direct" subordinate unit, as the Board contended. This appeal by the Board follows.[3]

The Board initially challenges the trial court's ability to make its own findings of fact. It contends that because the evidence presented before the trial court was not substantially different from that presented before the Board, the trial court erred by substituting its own findings of fact for those of the Board.

■■■ In appeals from licensing decisions made by the Board, a trial court is prohibited from reversing a decision of the Board unless the Board committed some manifest abuse of discretion or unless the trial court makes findings of fact that vary from those made by the Board. *Pennsylvania Liquor Control Board v. Can, Inc.*, 664 A.2d 695 (Pa.Cmwlth. 1995), *petition for allowance of granted in part*, 543 Pa. 391, 671 A.2d 1135 (1996). The trial court is permitted to make new findings only where the evidence presented before it

is substantially different than that presented before the Board. *Id.* Where no new facts are presented, the trial court is obligated to accept the decision of the Board, absent a clear abuse of discretion. *Arrington v. Pennsylvania Liquor Control Board*, 667 A.2d 439 (Pa.Cmwlth.1995). Our review of the transcripts from the hearings before both the Board and the trial court indicate that Whenry's testimony before the trial court was mainly a reiteration of the evidence presented before the Board and not substantially new or different. While his testimony clarified the structure and function of the Post, the Home Corporation and the national organization, it was not substantially different from that presented before the Board. As such, the trial court was not free to make new findings. In any event, whether the Board's or trial court's version of the findings of fact are used is somewhat irrelevant because the facts are not in dispute; only the legal inferences drawn from those facts leading to the resolution of the legal issue—whether or not the Home Corporation constitutes a "subordinate unit" of a national veterans' organization.

■■■ The Board also contends that because under the Liquor Code, what makes a unit subordinate to a national veterans' organization is unclear, we must defer to the Board's interpretation of such unless it is clearly erroneous. As to whether the trial court was required to defer to the Board's interpretation that Section 461.1 of the Liquor Code does not include the Home Corporation as a "subordinate unit" of a national veterans' organization, the Liquor Code defines an "incorporated unit" as "any incorporated post, branch, camp, detachment, lodge or other subordinate unit of a national veterans' organization." 47 P.S. § 4–461.1(b). Under Section 461.1(b), the "subordinate unit" of the national veterans' organization is defined only as an incorporated unit that has had 100 or more members for one year prior to its application for a liquor license. Because whether a home corporation falls within the

---

**3.** Our scope of review of a trial court's ruling on a licensing decision of the Board is limited to a determination of whether the trial court committed an error of law, abuse of discretion, or made findings of fact that were unsupported by the record. *Arrington v. Pennsylvania Liquor Control Board*, 667 A.2d 439 (Pa.Cmwlth.1995).

Liquor Code's definition of a "subordinate unit of a national veterans' organization", under Section 461.1(b), and it cannot be ascertained from the plain meaning of that section, we agree with the Board that Section 461.1(b) is ambiguous.

ˈ The Board contends that based upon the facts, its interpretation of the statute dictates that a subordinate unit must be one that has a direct hierarchial relationship with a national organization, and that this court, as well as the trial court, is required to defer to that interpretation because it is reasonable, and what constitutes a unit subordinate to a national veterans' organization is not clearly defined by the Code. The Board asserts that its legal interpretation that the Home Corporation was not a subordinate unit must be given great deference. In effect, it argues that its interpretation of the statute as well as the legal interpretation made under the facts presented show that the Home Corporation was not a subordinate unit of a national veterans' organization. If, as the Board asserts, the statute is ambiguous, we are required to give great deference to interpretations of statutes by agencies charged with the enforcement of such.

▇▇ In *Pennsylvania Human Relations Commission v. Uniontown Area School District,* 455 Pa. 52, 313 A.2d 156 (1973), our Supreme Court adopted a standard of "strong deference" for the review of such decisions. Under the "strong deference" standard, if the reviewing court determines that the intent of the legislature is clear, that is the end of the matter and that court, as well as the agency, are obligated to give effect to the clear meaning of the legislature's unambiguously expressed intent. *Bethenergy Mines, Inc. v. Department of Environmental Protection,* 676 A.2d 711, 715 (Pa.Cmwlth.1996). However, if the reviewing court determines that the legislature has not addressed the precise question at issue,

the reviewing court is not permitted to impose its own construction on the statute as would be necessary in the absence of an administrative interpretation, but review of the agency's construction of the statute is limited to a determination of whether the construction is permissible. *Id.* See also *Pennsylvania Electric Company v. Pennsylvania Public Utility Commission,* 166 Pa. Cmwlth. 413, 648 A.2d 63 (1994), *affirmed,* 544 Pa. 475, 677 A.2d 831 (1996).

▇▇ Unless the Board's interpretation of the language of Section 461.1 of the Liquor Code that to be a "subordinate unit", the unit must be hierarchically related to the national organization rather than indirectly through the voting control of Post members is unreasonable, we are obligated to accept it. While we may have interpreted this provision differently, the Board's interpretation of the statute is not clearly erroneous. Therefore, we, as well as the trial court, are bound by that interpretation and affirm the Board if the facts presented show that the Home Corporation does not fall within that definition.[4] Based on the facts showing that the Home Corporation is not under the direct control of the national organization, and because the Board found that the Home Corporation was set up to insulate the Post and national organization from liability for alcohol-related incidents, the Board found that the Home Corporation was separate, apart from, and not subordinate to the national organization. This is substantial evidence to support the Board's decision and it must be affirmed. Accordingly, the decision of the trial court is reversed.

### ORDER

AND NOW, this 12th day of December, 1996, the decision of the Court of Common

---

4. The Home Corporation contends that it presented evidence to establish that it clearly falls within the definition of a subordinate unit as set forth by the Code because it is undisputed that it is an incorporated unit that is comprised of over 250 members, roughly half of which are regular, voting members who control the activities of the Home Corporation, and half of which are non-voting, social members. Even if the Home Corporation's sole purpose is to maintain a lodge, club or quarters for the Post for public gatherings and other social purposes, and to maintain a physical structure for the Post, that is of no consequence where the statute is ambiguous and the Board set forth a reasonable interpretation of such.

Pleas of Mercer County, No.1995–4430, dated May 30, 1996, is reversed.