**PENNSYLVANIA LIQUOR CONTROL BOARD, Appellant,**

v.

**Thomas BARTOSH, Jr., T/A Tom & Eva's.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 20, 1998.

Decided May 12, 1999.

Robin Coward, Conshohocken, for appellant.

William Ruzzo, Kingston, for appellee.

Before COLINS, President Judge, SMITH, J., and MIRARCHI, Jr., Senior Judge.

SMITH, Judge.

The Pennsylvania Liquor Control Board (Board) appeals from an order of the Court of Common Pleas of Luzerne County reversing a decision of the Board which denied Thomas Bartosh's (Licensee) application for renewal of a restaurant liquor license pursuant to Section 470(a) of the Liquor Code, Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. § 4-470(a).[1]

The issues raised by the Board on this appeal are whether the trial court erred by making findings of fact which are not based on substantial evidence; whether the trial court erred by not holding that Licensee knew or should have known of drug activity on the subject premises and failed to take substantial steps to prevent such activity; whether the trial court erred by making findings of fact based on evidence which was not before the Board; and whether there is substantial evidence to sustain the Board's decision to deny Licensee's liquor license renewal application.

## I.

Licensee applied to the Board for a renewal of his liquor license to continue operating his establishment for a one-year term beginning August 1, 1995. On July 20, 1995, the Board notified Licensee that it objected to renewal of the license. A hearing was conducted before a hearing examiner who heard testimony, among

---

1. Section 470(a) of the Liquor Code grants the Board the authority to refuse a license renewal and provides in pertinent part:

    Unless the board shall have given ten days' previous notice to the applicant of objections to the renewal of his license, based upon violation by the licensee or his servants, agents or employes of any of the laws of the Commonwealth or regulations of the board relating to the manufacture, transportation, use, storage, importation, possession or sale of liquors, alcohol or malt or brewed beverages, or the conduct of a licensed establishment, or unless the applicant has by his own act become a person of ill repute, or unless the premises do not meet the requirements of this act or the regulations of the board, the license of a licensee shall be renewed.

others, from Licensee and Officer Tanya Dobranski, who was employed by the Fairview Township Police Department and was assigned to an undercover drug task force from October 1994 to February 1995.

Officer Dobranski testified that on various occasions she purchased cocaine from individuals in Licensee's establishment. In October 1994 she purchased a substance, field tested for cocaine, from a patron in the women's restroom; the patron was later arrested, tried and convicted of possession/distribution of a controlled substance. Other cocaine purchases were made at the bar in October from certain named individuals; in November a drug purchase was effected between the officer and a patron in front of the premises; and in January 1995 a drug buy was negotiated with a patron at the bar but consummated at another location. In addition, she observed other drug transactions between patrons take place at the bar. On January 10, 1995, the officer heard Licensee announce to someone in the bar "no drugs tonight, the police are coming" and add that he would kick that person out of the bar. Counsel stipulated that 28 telephone-call complaints were made to the police from June 1993 to February 1995 concerning improper conduct occurring at the premises.

Licensee testified that he barred certain individuals from the premises and that he took preventive steps such as securing the restroom keys and changing the telephone number to the bar. However, these steps were taken only in compliance with conditions imposed at the District Attorney's request when the trial court lifted a temporary injunction that enjoined any business activity on the premises for 90 days from February 1, 1995 to May 1, 1995 and permitted Licensee to reopen the bar. Further, Licensee only barred individuals from the premises after the District Attorney's office provided him with a list of persons that the undercover investigation had identified as being involved in drug transactions. The record does not reflect any affirmative steps taken by Licensee to prevent illegal drug activity prior to issuance of the temporary injunction or prior to imposition of conditions imposed by the District Attorney.

The Board found the following three reasons sufficient for denial of the application: the trial court had issued the temporary writ of injunction enjoining any business activity on Licensee's premises for 90 days; there was improper conduct on the premises from June 1993 to February 1995, which included drug activity, assaults, gambling, disorderly conduct and fights; and Licensee had received various citations for Liquor Code violations. The Board considered the reasons for denial independently and in the aggregate, and it found that a pattern of drug activity existed and that Licensee knew or should have known of the drug activity but took no substantial steps to prevent it. The Board accepted the recommendation of the hearing examiner and denied Licensee's license renewal application pursuant to Section 470(a) of the Liquor Code.

The trial court heard additional testimony from former Wilkes–Barre Police Chief Joseph Coyne and Police Captain William Maguire. Chief Coyne testified that he had knowledge of the investigation and participated in a drug raid on February 1, 1995. He stated that if the target of the drug raid had knowledge of an impending raid it would be considered a serious internal leak requiring an investigation. In this case, no investigation was initiated. Captain Maguire, who had direct command of the investigation, corroborated the testimony of Chief Coyne. He testified that the only drug raid planned for Licensee's bar was in February 1995 and that Officer Dobranski was mistaken in her testimony that a drug raid was planned for January 1995. The trial court found that this new testimony was substantially different from the testimony before the Board and that it directly contradicted the testimony of Officer Dobranski. The trial court, therefore, determined that the Board's conclusion of

law that Licensee knew or should have known of drug activity on the premises was not supported by substantial evidence, and it also concluded that the Board relied solely on the temporary injunction, which was obtained ex parte, and that the Board abused its discretion in denying Licensee's application on this basis.

## II.

■ With regard to its scope of review of the Board's order, the trial court cited *Beach Lake United Methodist Church v. Pennsylvania Liquor Control Board*, 126 Pa.Cmwlth. 71, 558 A.2d 611 (1989), and *Rosing, Inc. v. Pennsylvania Liquor Control Board*, 690 A.2d 758 (Pa.Cmwlth.1997), which hold that a trial court may not substitute its own findings for those of the Board when the evidence the court hears is substantially the same as the evidence heard before the Board. The trial court may, however, reverse where the Board has abused its discretion. Relying upon this scope of review, the trial court concluded that the evidence presented before the court was substantially different from the evidence presented to the Board, and, as a result, it reversed the Board's denial of Licensee's application.[2]

■ The Supreme Court recently clarified that in appeals under Section 464 of the Liquor Code, 47 P.S. § 4–464,[3] involving the Board's grant or denial of liquor licenses or the renewal or transfer of such licenses, the trial court may make its own findings and reach its own conclusions based on those findings even when the evidence it hears is substantially the same as the evidence presented to the Board. *Pennsylvania Liquor Control Board v. Richard E. Craft American Legion Home Corp.*, 553 Pa. 99, 718 A.2d 276 (1998). The Supreme Court has apparently signaled that its holding in *Pennsylvania State Police v. Cantina Gloria's Lounge, Inc.*, 536 Pa. 254, 639 A.2d 14 (1994), is to be applied without limitation in all licensing appeals under Section 464 of the Liquor Code, as well as in citation/enforcement appeals under Section 471, 47 P.S. § 4–471.[4] Heretofore, this Court followed the standard enunciated in the *Beach Lake, Ball Park's Main Course, Inc., v. Pennsylvania Liquor Control Board*, 163 Pa.Cmwlth. 636, 641 A.2d 713 (1994), and *Rosing* line of cases for the appropriate scope of review to be applied in licensing appeals. As mentioned, that standard provides that a trial court may not substitute its own findings for those made by the Board when the evidence heard by the trial court is substantially the same as the evidence heard before the Board.

Citing *Craft* the Supreme Court recently issued a per curiam order that granted a petition for allowance of appeal and reversed this Court's decision in *G.C.P. En-*

2. This Court's review in a liquor license renewal case is limited to a determination of whether the trial court's findings of fact are supported by substantial evidence and whether the trial court committed an error of law or abused its discretion. *Hyland Enterprises, Inc. v. Pennsylvania Liquor Control Board*, 158 Pa.Cmwlth. 283, 631 A.2d 789 (1993).

3. Section 464 of the Liquor Code provides that any applicant who has appeared at any hearing and who is aggrieved by the Board's refusal to issue a license renewal or transfer may appeal to the court of common pleas. That section also provides:

The court shall hear the application de novo on questions of fact, administrative discretion and such other matters as are involved, at such time as it shall fix, of which notice

shall be given to the board. The court shall either sustain or over-rule the action of the board and either order or deny the issuance of a new license or the renewal or transfer of the license or the renewal of an amusement permit to the applicant.

4. In *Cantina Gloria's Lounge* the Supreme Court engaged, *inter alia*, in an historical analysis of the interplay between Section 471 and Section 464 appeals and the effect of legislative amendments to Section 471. It held that appeals before the court of common pleas are de novo on questions of law and fact and that the courts may "sustain or over-rule the board, without regard to whether the same or different findings of fact or conclusions of law are made." *Id.* at 265, 639 A.2d at 19.

terprises Inc. v. Pennsylvania Liquor Control Board, 555 Pa. 545, 725 A.2d 749 (1999). In *G.C.P. Enterprises* a licensee appealed a Board denial of a liquor license renewal application as did Licensee in the case sub judice. This Court cited *Ball Park's Main Course* and *Beach Lake* as authority for the appropriate scope of review and reversed the trial court's decision to overrule the Board's denial of the license renewal application. The Court concluded that substantial evidence existed in the record to prove that the licensee did not take reasonable measures to stop drug activity on the licensed premises.

### III.

The Board contends that the trial court made findings of fact which are not supported by substantial evidence. It is well established that the trial court's findings must be supported by substantial evidence on the record as a whole to withstand appellate scrutiny. *See Manayunk Development Corp. v. Pennsylvania Liquor Control Board,* 715 A.2d 518 (Pa. Cmwlth.1998). An examination of the record shows that the additional testimony presented by Chief Coyne and Captain Maguire does not support the trial court's finding that Licensee did not know nor should he have known of drug activity on the premises. Notably, the court did not find an absence of drug activity on the premises. The trial court found a conflict in the testimony concerning timing of the drug raid but disposed of Officer Dobranski's remaining testimony before the Board by stating only that the court was free to reject some or all of it. The trial court discussed none of the drug buys, Licensee's citation history nor the stipulated evidence of other improper conduct occurring on the premises. A thorough review of the record strongly supports the conclusion that the trial court's sparse findings are not supported by the evidence

and that any conclusions reached by the trial court are contrary to the law.

The Court agrees with the Board that the trial court erred in determining that the Board relied solely on the temporary injunction to deny Licensee's application. The record demonstrates that the Board considered three factors independently and in the aggregate when it refused the license renewal. The Board specifically considered the improper conduct occurring on Licensee's premises from June 1993 to February 1995. The Board also considered Licensee's extensive citation history. In 1989 Licensee received three citations for possessing or operating gambling devices or paraphernalia or permitting gambling or lotteries on his premises in violation of Section 471 of the Liquor Code. In 1994 he was cited for furnishing alcoholic beverages to a visibly intoxicated person in violation of Section 493(1), 47 P.S. § 4–493(1). In 1995 he was again cited for violations of Section 471 and for violation of Section 102, 47 P.S. § 1–102, because he did not maintain a bona fide restaurant.[5] This Court has consistently held that regardless of when they occur the Board may consider all code violations committed by a licensee in determining whether to renew a liquor license. *Hyland; Ball Park's Main Course.*

Based upon the foregoing discussion and analysis, the Court decides that the trial court erred in concluding that the Board relied solely upon the temporary injunction in denying Licensee's application and that it abused its discretion in doing so. While the trial court is free under *Craft* to modify, sustain or reverse the Board's decision to deny the license renewal, notwithstanding substantial evidence to support the Board's findings or that the evidence before the trial court was substantially the same, the trial court may

---

**5.** Section 102 of the Liquor Code states that an "eating place" shall mean a premises where food is regularly and customarily prepared and sold, having a total area of not less than 300 square feet available to the public in one or more rooms, other than living quarters, and equipped with tables and chairs accommodating 30 persons at one time.

do so only where its findings are supported by substantial evidence in the record as a whole. Because the trial court's findings are not supported by substantial evidence, its order must be reversed and the Board's order denying Licensee's application reinstated.

### ORDER

AND NOW, this 12th day of May, 1999, the order of the Court of Common Pleas of Luzerne County is reversed.